# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| PEARSON EDUCATION, INC.; CENGAGE LEARNING, INC.; and MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DOES 1-100, <br><br> Defendants. | Civil Action No. 17-cv-203-DAB <br><br> **COMPLAINT FOR:** <br><br> 1. COPYRIGHT INFRINGEMENT <br>    (17 U.S.C. § 101, *et seq.*) <br> 2. SECONDARY COPYRIGHT INFRINGEMENT <br>    (17 U.S.C. § 101, *et seq.*) <br> 3. TRADEMARK INFRINGEMENT <br>    (15 U.S.C. § 1114) <br> 4. TRADEMARK COUNTERFEITING <br>    (15 U.S.C. § 1114) <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Pearson Education, Inc., Cengage Learning, Inc., and McGraw-Hill Global Education Holdings, LLC, and (collectively, "Plaintiffs") for their Complaint against Defendants Does 1-100, allege, on personal knowledge as to matters relating to themselves and on information and belief as to all other matters, as follows:

## INTRODUCTION

1. Plaintiffs are three of the world's leading educational publishers. They provide a comprehensive range of traditional and digital educational content and tools to professionals and students of all ages.

2. Defendants sell counterfeit textbooks on Amazon.com, using Amazon's fulfillment services. Hiding behind the anonymity of Internet pseudonyms, Defendants sell counterfeit copies of Plaintiffs' copyrighted works, bearing unauthorized reproductions of Plaintiffs' trademarks, to individual consumers and third-party sellers. The textbooks

Defendants sell are not the legitimate and authorized versions published by Plaintiffs, but rather are counterfeit versions that infringe on Plaintiffs' copyright and trademark rights.

3.     The fact that Defendants sell counterfeits of Plaintiffs' textbooks on Amazon.com, the world's largest e-commerce retailer, causes even greater damage to Plaintiffs. Plaintiffs sell their textbooks through various wholesale and retail channels, including to Amazon for sale on Amazon.com. Plaintiffs' textbook sales on Amazon.com—whether by Amazon itself, other wholesalers, or third-party sellers—represent an important channel for Plaintiffs' textbook sales. Defendants and their Online Storefronts advertise, offer, and sell their counterfeit copies on the Amazon marketplace to the same purchasers seeking out legitimate copies of Plaintiffs' textbooks. Defendants identify the textbooks using the legitimate textbooks' names and authors, images of the covers of the textbooks that include Plaintiffs' marks, and the ISBN reference numbers that identify the textbook. Defendants all use Amazon's fulfillment services to ship their Orders from Amazon directly. Defendants often sell their counterfeit versions at a price below the market price for the legitimate books. In so doing, Defendants undercut sales and the perceived value of authorized and legitimate copies of Plaintiffs' textbooks.

4.     Plaintiffs bring this Complaint for damages and injunctive relief to bring to an end and to seek redress for Defendants' infringement of Plaintiffs' intellectual property rights.

**JURISDICTION AND VENUE**

5.     This is a civil action arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and the Lanham Act, 15 U.S.C. §§ 1114 *et seq.* This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 1338(a) and 15 U.S.C. § 1121.

6.     The Court has personal jurisdiction pursuant to N.Y. C.P.L.R. § 302 over all

Defendants because they transacted business and committed tortious acts within and directed to New York, and Plaintiffs' claims arise from those activities. In particular, Defendants (a) transact business within New York or contract to supply goods, including counterfeit goods, in New York, (b) have committed acts of copyright and trademark infringement and counterfeiting within New York and in this District, and (c) have committed acts of copyright and trademark infringement and counterfeiting outside New York, which caused injury to Plaintiffs within New York, and Defendants expected or should reasonably have expected such acts to have consequences in New York, and Defendants derive substantial revenue from interstate or international commerce.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 28 U.S.C. § 1400(a).

## PARTIES

8.      Plaintiff Cengage Learning, Inc., formerly Thomson Learning Inc. ("Cengage"), is a Delaware corporation with offices located New York.

9.      Plaintiff McGraw-Hill Global Education Holdings, LLC ("MHE") is a Delaware limited liability company with its principal place of business at 2 Penn Plaza, New York, New York 10020.

10.     Plaintiff Pearson Education, Inc. ("Pearson"), is a Delaware corporation with its principal place of business at 330 Hudson Street, New York, New York 10013.

11.     The true names and identities of the Defendant Does 1 through 100 are unknown to Plaintiffs at this time. Each Doe Defendant conducts business through Amazon. Each Doe Defendant is involved in selling and distributing counterfeit textbooks. Plaintiffs believe that information obtained in discovery will lead to the identification of the Doe Defendants' true

names and permit Plaintiffs to amend this Complaint to state the same.

## PLAINTIFFS' BUSINESSES

12.     Plaintiffs are among the world's largest providers of tailored learning solutions. In the academic marketplace, Plaintiffs serve secondary, post-secondary, and graduate-level students, teachers, and learning institutions providing quality content, assessment tools, and educational services in all available media. Plaintiffs' products and services are sold throughout the world, through direct channels and via a worldwide network of distributors, including Amazon.com. Plaintiffs invest significant resources annually in the worldwide advertisement and promotion of their goods and services under all their marks.

13.     Plaintiffs' publish their works under many imprints, or brands, that are well known and highly respected. Cengage's imprints include Brooks/Cole, Delmar, Heinle, South-Western Educational Publishing, Gale, Wadsworth, and National Geographic Learning. MHE's imprints include Glencoe/McGraw-Hill, Irwin/McGraw-Hill, Lange Medical Books, and Mayfield Publishing. Pearson's imprints include Addison Wesley, Longman, Allyn & Bacon, Benjamin Cummings, Prentice Hall, and Penguin Random House. These are just some of the Plaintiffs' many valuable and recognizable imprints.

14.     Plaintiffs' publications include physical textbooks (collectively, "Textbooks"). These Textbooks are widely available in the marketplace for sale or rental, including from physical and online bookstores.

15.     Plaintiffs suffer serious financial and reputational injury when their copyrights and trademarks are infringed. A substantial decline in revenue from sales or rentals of Plaintiffs' copyrighted works could cause Plaintiffs to cease publication of one or more deserving Textbooks. This would have an adverse impact on the creation of new Textbooks, on scholarly

endeavor, and on scientific progress, by making it more difficult to publish deserving Textbooks.

16.     Both publishers and authors alike are deprived of income when their Textbooks are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.

### PLAINTIFFS' FEDERALLY REGISTERED COPYRIGHTS AND TRADEMARKS

#### A.     Plaintiffs' Respective Copyright Registrations

17.     Plaintiffs are the copyright owners of, and/or the owners of the exclusive rights under copyright in, *inter alia*, those works or derivative works described on Exhibit A (hereinafter, "Plaintiffs' Books" or "Books").  Plaintiffs or their affiliates have obtained copyright registrations, duly issued by the United States Copyright Office, covering Plaintiffs' Books.

#### B.     Plaintiffs' Respective Trademark Registrations

18.     Plaintiffs' Books bear trademarks and service marks as set forth on Exhibit B (hereinafter, "Plaintiffs' Marks"), which Plaintiffs or their affiliates have duly registered on the Principal Registrar of the United States Patent and Trademark Office.  Plaintiffs own or are the exclusive licensee of Plaintiffs' Marks.  Plaintiffs' Marks are distinctive and arbitrary and are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Plaintiffs and/or their predecessors invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs' Marks.

### THE AMAZON.COM MARKETPLACE

19.     Amazon.com, Inc. ("Amazon") is a global e-commerce company and is the world's largest e-commerce retailer.  Amazon also sources, offers for sale, and sells a wide range of products from manufacturers, wholesalers, and brand owners directly to consumers on its

website, Amazon.com.  In this respect, Amazon sells Textbooks that it purchases directly from the Plaintiffs.  In addition to providing a platform for Amazon's own sales, Amazon.com is a marketplace for third-party sellers worldwide to advertise, offer for sale, and sell their products or goods directly to consumers.

20.    A key feature of Amazon.com is that multiple sellers can offer the same product. Each product sold on Amazon.com is listed on or in connection with a product detail page ("product page"), which includes a product image, price, description, customer reviews, ordering options, and a link to view offers from all sellers of the product.

21.    Amazon provides third-party sellers on its platform the option of using its Fulfillment by Amazon ("FBA") service, which allows sellers to outsource warehouse, shipping, and customer service operations to Amazon in exchange for an extra fee.  FBA sellers ship their products to one of Amazon's fulfillment centers across the country and have Amazon store, pack, ship, and handle customer service and returns for the FBA seller's products and goods. The buyer never interacts with the FBA seller directly unless they have an inquiry and choose to communicate with the seller (anonymously) through Amazon's platform.

22.    When a customer purchases a product from an FBA seller, Amazon.com displays the FBA seller's storefront name and indicates that the purchase will be "Fulfilled by Amazon." When Amazon is selling a product on Amazon.com, the relevant product page includes the designation "Ships from and sold by Amazon.com."  An FBA seller's products are eligible for free shipping on qualifying orders as well as Amazon Prime's "FREE Two-Day Shipping" available to all Amazon Prime members.

23.    The FBA program also offers sellers "Multi-Channel Fulfillment," in which Amazon fulfills a seller's orders received through other sales channels (e.g., other platforms such

as eBay or the seller's own website) using the seller's inventory stored in Amazon fulfillment centers.

24. The product page on Amazon.com for books is tied to the book's International Standard Book Number ("ISBN"). Accordingly, on Amazon.com there will be a single product page for each of Plaintiffs' Textbooks that lists multiple sellers, including those who may be selling counterfeits. To unsuspecting individual consumers, the offers all appear to be for legitimate copies of textbooks because they are listed under the same product page as the authentic version. The consumer is left to choose which price they want to pay and from which seller.

25. Customers may leave a review about a product on the product page. Customers may also leave a review about the buying or shipping experience or the quality of the particular product they received. On that same product page, there often are substantive reviews about a product and reviews that comment on the buyer's experience with the particular seller that sold the product. As such, someone who purchases a textbook on Amazon.com may leave a review complaining about the book's inferior quality, as is often the case with counterfeits, on the textbook's product page. The name of the seller that supplied the counterfeit, or otherwise provided the consumer with an unsatisfactory experience, is not associated with the textbook's product page. As a result, the overall review—and perceived value—of the author's and publisher's work deteriorates.

## DEFENDANTS' UNLAWFUL ACTIVITIES

26. Defendants operate a group of seller accounts or storefronts on Amazon.com through which they sell unauthorized and illegal counterfeit textbooks, including Plaintiffs' Books.

27. Among the known seller accounts or storefronts Defendants have established on Amazon.com are the following:

(a) _Best_Bookstore_ (Seller ID - AHVFVEEJX47FM)

(b) ABC Trading Group (Seller ID A2MBNV2T9HT1Y0)

(c) acerbooks (Seller ID A2YZKS0F51PXLM)

(d) Amazeeng (Seller ID AL5UW87ML1EXF)

(e) Atlantic Corner (Seller ID A2R8A4DP65CE1)

(f) Books Deposit Worldwide, f/k/a Fiedel Retails (Seller ID A2LGOO4N4RK026)

(g) Boosti LLC (Seller ID A179GETFEHNZR2)

(h) CalText Books (Seller ID ATVPDKIKX0DER)

(i) Cameron's Treasures (Seller ID AOU12I4K26OHC)

(j) CheapAZZBooks (Seller ID A2TKMPXX6CQRJI)

(k) classicbook (Seller ID A294CMWX8KAGBE)

(l) Donald Boone (Seller ID A3PBGSERTQXEVG)

(m) eBOOKSHOUSE (Seller ID A2AHKOYMZDI15S)

(n) Fine Line Media (Seller ID A210ICNPH3ZM0M)

(o) happy_textbooks (Seller ID A18SIXOC6A2FIL)

(p) Marion Marketplace (Seller ID A2VD3DBSBAUDUU)

(q) Mommys Place (Seller ID AUJVS5879E9OV)

(r) nightdream (Seller ID A2GQ8MJSSI69Z2)

(s) onlinebeagle_books (Seller ID A35TMV14ZDNOGT)

(t) ORCHIDSALES (Seller ID A3T0DRZUGQ8ZE2)

(u)　　Plan-B-99 (Seller ID A3VBR8RLJKV8E2)

(v)　　Qcomma (Seller ID A2OCHQVZ4MLWXB)

(w)　　QVC-media (Seller ID A2EBI7JXH8HHEA)

(x)　　RockCityBooks (Seller ID A2TFZQQVV4WT3I)

(y)　　Shaqsnow (Seller ID A2032QCFJ6CJ3)

(z)　　Simple Livings (Seller ID A196TNQGJJJJV7)

(aa)　　Tesco Link (Seller ID ALNI5J7Y9NC6C)

(bb)　　TEXTbookAMAZING (Seller ID A2TKMPXX6CQRJI)

(cc)　　theBookArb (Seller ID AB6G7R444K8T2)

(dd)　　univbooks2011 (Seller ID A3OYGTB0TWCI6A)

(collectively, the "Online Storefronts"). Defendants may likely operate other Amazon seller accounts of which Plaintiffs are not yet aware. They may also operate on other Internet marketplaces or websites.

28.　　Using their Online Storefronts, Defendants offer for sale and sell counterfeit copies of Plaintiffs' and others' copyrighted Textbooks. Defendants have been engaged in infringing activity since at least November 2016 and are continuing in those activities now. Some or all of Defendants appear to be working collectively because many of the Counterfeit Books exhibit the same counterfeit traits and inferior qualities. Some of Defendants' Online Storefronts also offer similar inventories.

29.　　Plaintiffs have made test purchases from Defendants' Online Storefronts, which confirm that Defendants distribute counterfeit copies of Plaintiffs' Books bearing Plaintiffs' Marks (hereinafter, the "Counterfeit Books"). The list of 36 Counterfeits Books does not describe all the textbook titles that Defendants are infringing but rather a subset.

30.     Defendants' Online Storefronts utilize Amazon's FBA service, which means that Amazon ships, receives returns, and handles customers for Defendants.  As a result, the true identities and addresses of Defendants remain hidden from the shipments of the Counterfeit Books.  In addition to fulfilling the order, Amazon processes the payment for the Counterfeit Books, as it does for all third-party seller's orders.  Amazon collects the money and then pays Defendants.  As Defendants' customers in the test purchases, Plaintiffs received no information regarding the identity of the sellers behind the Online Storefronts.

31.     Based on a review of Defendants' Online Storefronts on Amazon.com, Defendants generally sell at deeply discounted prices often associated with counterfeits.  In fact, Defendants offer what purport to be current-edition, brand-new copies of Plaintiffs' Textbooks for just a fraction of the list price, and even far below Amazon.com's own highly discounted price.  Such prices are highly suspect and tend to indicate, as Plaintiffs later confirmed, that Defendants source from illegitimate suppliers.  For example, Amazon.com offers a new copy of the latest edition of Cengage's work, *Public Finance: A Contemporary Application of Theory to Policy* (11th edition), by David Hyman, for $348.20, which is 13% off the list price of $397.95.  Defendants' Online Storefront, TEXTBookAMAZING, offers the same new textbook for $71.00 (a purported savings of 82% off the list price).  Similarly, Amazon.com offers a new copy of the latest edition of Pearson's work, *Procedures in the Justice System* (11th edition), by Cliff Roberson and Harvey Wallace, for $183.05, which is 13% off the list price of $209.20.  Defendants' Online Storefront, Simple-Livings, offers the same new textbook for $63.98 (a purported savings of 31% off the list price).  Likewise, Amazon.com sells a new copy of the current edition of MHE's work, *Hole's Human Anatomy & Physiology* (14th edition) by Shier, for $282.04, which is just 15% off the list price of $332.33.  Defendants' Online Storefront,

classicbook, offers the same new book for $88.00 (a purported savings of 74% off the list price).

32.     Defendants intentionally purchase counterfeit copies of Plaintiffs' Books at a materially cheaper price than they would be required to pay had they purchased Plaintiffs' products directly from the respective publishers or from legitimate third-party sellers, pursuant to the custom and practice of the bookselling industry.  In doing so, Defendants deliberately evaded Plaintiffs or other legitimate sources, and chose instead to source illegal and counterfeit copies of Plaintiffs' products, in violation of Plaintiffs' intellectual property rights.  Defendants then provided the Counterfeit Books to Amazon for distribution to customers of Defendants' Online Storefronts.

33.     At the time that Defendants distributed and sold the Counterfeit Books, Defendants knew or should have known that the Counterfeit Books were infringing based on their "too good to be true price" and inferior quality.

34.     Defendants knowingly directed, supervised, and controlled the importation and/or distribution of the Counterfeit Books, and had a direct financial interest in, and stood to gain a direct financial benefit from, their deliberately infringing activity.

35.     By engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, Defendants also personally induced, caused, and materially contributed to infringing conduct by others, including resellers to whom Defendants sold the Counterfeit Books.  The resellers would have further distributed the Counterfeit Books.

36.     Defendants did more than supply the means to facilitate the infringement of Plaintiffs' intellectual property rights.  They also substantially participated in, and orchestrated, such infringing activities.

37.     The Counterfeit Books are inferior to Plaintiffs' Books.  Among other differences, the binding, glue, paper, color and printing are often different and inferior.  Based on the use of Plaintiffs' trademarks, actual and prospective purchasers are likely to believe that the Counterfeit Books are Plaintiffs' Books.  The Counterfeit Books' inferior quality weakens, blurs, and tarnishes Plaintiffs' respective trademarks.  Plaintiffs' business reputations are further injured by having their trademarks and the goodwill associated with them confused or mistakenly associated with a group or series of textbooks of lesser quality, as alleged above.

38.     While Plaintiffs have identified some of the Counterfeit Books that Defendants have imported and/or distributed, Plaintiffs have not identified all of them.  Defendants' infringing activities are rampant.  The works described on Exhibit A are only examples of Counterfeit Books that Defendants have introduced into the marketplace.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement Under 17 U.S.C. §§ 101, *et seq.*

39.     Plaintiffs re-allege and incorporate by reference the allegations set forth above in paragraphs 1-38.

40.     Plaintiffs' Books constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they are protected by registrations duly issued to Plaintiffs (or their predecessors or affiliates) by the United States Copyright Office.

41.     At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective copyrights in Plaintiffs' Books, which have never been assigned, licensed, or otherwise transferred to Defendants.

42.     Beginning on an unknown date but at least since November 2016 and continuing to the present, Defendants, with knowledge of Plaintiffs' copyrights in Plaintiffs' Books,

infringed Plaintiffs' copyrights. Specifically, Defendants infringed Plaintiffs' exclusive rights to import and/or distribute to the public by sale or other transfer of ownership. They did so by, among other things, distributing and selling the Counterfeit Books for profit, without Plaintiffs' permission, license, or consent.

43.     Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.

44.     As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

45.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

## SECOND CLAIM FOR RELIEF

### Secondary Copyright Infringement Under 17 U.S.C. §§ 101, et seq.

46.     Plaintiffs re-allege and incorporate by reference the allegations set forth above in paragraphs 1-38.

47.     Plaintiffs' Books constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they are protected by registrations duly issued to Plaintiffs (or their predecessors or affiliates) by the United States Copyright Office.

48.     At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective copyrights in Plaintiffs' Books, which have never been assigned, licensed, or otherwise transferred to Defendants.

49. Beginning on an unknown date but at least since November 2016 and continuing to the present, Defendants, with knowledge of Plaintiffs' copyrights in Plaintiffs' Books, indirectly infringed Plaintiffs' copyrights. Specifically, Defendants knowingly engaged in, supervised, and/or controlled the importation, distribution, and/or sale of the Counterfeit Books, and had a direct financial interest in, and stood to gain a direct financial benefit from their deliberately infringing activity. By engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, Defendants personally induced, caused, and materially contributed to infringing conduct by others, including resellers to whom Defendants sold the Counterfeit Books for further distribution. Accordingly, Defendants are liable for contributory and vicarious copyright infringement.

50. Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.

51. As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

52. Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

## THIRD CLAIM FOR RELIEF

### Infringement of Federally-Registered Trademarks Under 15 U.S.C. § 1114

53. Plaintiffs re- allege and incorporate by reference the allegations set forth above in paragraphs 1-38.

54. This claim, arising under Section 32 of the Lanham Act, 15 U.S.C. § 1114, is for infringement of trademarks registered to Plaintiffs in the United States Patent and Trademark Office.

55. Without Plaintiffs' authorization, Defendants are marketing, offering for sale, and selling in commerce counterfeit textbooks under Plaintiffs' Marks.

56. Defendants' aforesaid uses of Plaintiffs' Marks have caused and are likely to continue to cause confusion, mistake, and/or deception as to the source or origin of Defendants' goods, in that the public, and others, are likely to believe that Defendants' goods are provided by, sponsored by, approved by, licensed by, affiliated with, or in some other way legitimately connected with Plaintiffs, all to Plaintiffs' irreparable harm.

57. Defendants, by their above-enumerated acts, willfully and knowingly have violated and infringed Plaintiffs' rights in and to the federally registered Marks, in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114), and Defendants threaten to further violate and infringe Plaintiffs' said rights.

58. Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' Marks, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

59. Defendants' aforesaid conduct was intentional, or deliberately reckless, and without foundation in law.

## FOURTH CLAIM FOR RELIEF

### Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(a)

60.     Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1-38.

61.     Defendants are infringing the federally registered Plaintiffs' Marks through their use in commerce of a counterfeit, copy, or colorable imitation of Plaintiffs' Marks, in connection with the sale, offering for sale, marketing, distributing, or advertising of textbooks, with such use being likely to cause confusion, to cause mistake, or to deceive the public.

62.     Defendants are intentionally using Plaintiffs' Marks on unauthorized products. Defendants are intentionally infringing upon Plaintiffs' trademark rights in order to further their own business enterprises.

63.     Defendants' counterfeiting of Plaintiffs' Marks, as described above, has caused and will continue to cause irreparable injury to Plaintiffs' reputation and goodwill, for which Plaintiffs have no adequate remedy at law.  Unless this Court restrains Defendants from continuing their counterfeiting activities, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further counterfeiting.

### PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1.     Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

2.      An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Counterfeit Books with documents relating to all such purchases and sales;

3.      An order requiring Defendants to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

4.      An order enjoining Defendants and those acting in concert with them from further infringing upon Plaintiffs' respective copyrights pursuant to 17 U.S.C. § 502;

5.      An order enjoining Defendants and those acting in concert with them from further infringing upon Plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

6.      An order requiring Defendants to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful use of their trademarks, as alleged above, including statutory damages or treble damages, pursuant to 15 U.S.C. § 1117;

7.      An order requiring Defendants to deliver up for destruction all products, packaging, labels, literature, advertising, and other material bearing imitations, including confusingly similar variations, of Plaintiffs' respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

8.      Prejudgment and post-judgment interest at the applicable rate;

9.      Plaintiffs' attorney's fees, expenses, and costs of suit; and

10.      Such other and further relief the Court deems proper.

DATED: January 10, 2017                    Respectfully submitted,

                                           By: *Kerry M. Mustico*

                                           Matthew J. Oppenheim
                                           Kerry M. Mustico
                                           OPPENHEIM + ZEBRAK, LLP
                                           5225 Wisconsin Avenue NW, Suite 503
                                           Washington, DC 20015
                                           Tel: (202) 480-2999
                                           Fax: (866) 766-1678
                                           matt@oandzlaw.com
                                           kerry@oandzlaw.com

                                           *Attorneys for Plaintiffs*